U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 MAR 22  AM 10: 06

BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| NATHAN LEONARD WHITE, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No. 5:15-cv-130 |

**OPINION AND ORDER**
(Docs. 5, 8)

Plaintiff Nathan Leonard White brings this action under 42 U.S.C. § 405(g), requesting review and remand of the decision of the Commissioner of Social Security denying his application for disability insurance benefits. (Doc. 1.) The Commissioner filed an Answer on August 17, 2015. (Doc. 4.) On October 15, 2015 White filed a Motion for an Order Reversing the Commissioner's Decision, asserting that the Administrative Law Judge (ALJ) erred in concluding that he is not disabled. (Doc. 5.) White asserts, among other things, that the ALJ failed to identify all of his severe impairments, including his mental impairments. (*Id.* at 10.) For the severe physical impairments that the ALJ did identify—migraine headaches, hearing loss, and disorders of the muscle, ligament, and fascia of the back and neck—White asserts that the ALJ erred in his analysis of those impairments. For relief, White seeks reversal and remand with instructions to award benefits, or, alternatively, remand for further proceedings under sentence four of § 405(g). (*Id.* at 21.)

On December 14, 2015, the Commissioner filed a Motion requesting a remand for further administrative proceedings under sentence four of § 405(g), conceding that the Commissioner

improperly failed to consider White's mental impairments. (Doc. 8.) The Commissioner maintains, however, that payment of benefits is not an appropriate remedy because the record lacks persuasive proof of disability. (Doc. 8 at 3.) The Commissioner also argues that, even accepting White's alleged additional limitations, the record lacks sufficient evidence to make the necessary determinations. (*Id.*)

In his reply, White asserts, among other things, that substantial evidence shows that his impairments of chronic pain and migraine headaches were disabling even without consideration of his mental impairments. (Doc. 11 at 1.) White maintains that the record contains persuasive proof of disability, and that remand for payment of benefits is appropriate. (*Id.* at 3.) In his reply, White seeks reversal and remand with an order to place him in "pay status," or alternatively reversal and remand with an order to hold a hearing solely to address the issue of his mental impairments. (*Id.* at 4.) For the reasons stated below, White's Motion (Doc. 5) is GRANTED IN PART, the Commissioner's Motion (Doc. 8) is GRANTED, and the case is REMANDED for further proceedings and a new decision.

## Background

White was 32 years old on his alleged disability onset date of September 30, 2010. He completed high school but had no additional formal education after that. He is married and has two children. Prior to the alleged disability period, he worked as a mail-handler or custodian for the United States Postal Service, and before that as a freight hauler for C&S Wholesale Grocers, Inc. On the date of his August 21, 2014 administrative hearing, he was not employed and had not been employed since 2010.

White has suffered from migraines since about 2002. He testified that at that time he would get migraines more than 20 days out of each month, and that two or three days per month

he would be unable to get out of the house. (AR 58–59.) He has been receiving treatment for the migraines since 2002, and the migraines have "gotten a lot better" with treatment. (AR 58.) White testified that now he does not get as many migraines as he did in 2002, but the migraines he does get now are "a lot stronger." (AR 59.) Presently he gets one migraine every eight to ten days; it might last for four hours or two days. (*Id.*) All of the migraines he gets now force him to get in bed and make him "essentially non-functional." (*Id.*) White testified that the migraines he gets now are "a lot stronger" than they were in 2012. (AR 60.) He also testified, however, that in 2012 the migraines he was dealing with were "[p]retty much along the same lines" as those he experiences now. (AR 61.)

White filed an application for disability insurance benefits in May 2013. (AR 172.) The claim was denied initially and on reconsideration. (AR 88, 98.) White timely requested an administrative hearing, which was conducted on August 21, 2014 before ALJ Paul G. Martin. (AR 38–80.) Vocational Expert (VE) Lynn Paulson appeared at the hearing but was not called upon to testify. White and his wife Elizabeth White both testified; Elizabeth testified that, in 2012, Nathan suffered incapacitating headaches for "probably four full days" each month. (AR 77.) After the hearing, the ALJ admitted additional written evidence submitted by White consisting of interrogatory responses from White's primary care physician, Dr. Cecil Beehler. (AR 722–23.)

On November 26, 2014, ALJ Martin issued a decision finding that, based on White's May 2013 application, White was not disabled under the Social Security Act through September 30, 2012, the date last insured. (AR 36.) The Appeals Council denied White's request for review, rendering ALJ Martin's November 26, 2014 decision the final decision of the Commissioner. (AR 1.) White filed his Complaint in this court on June 15, 2015. (Doc. 1.)

## ALJ Martin's Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam).

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [*per se*] disabled. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Id.* at 417–18 (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (alteration and omission in original)); *see* 20 C.F.R. § 404.1520. The claimant bears the burden of proving his case at steps one through four. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). At step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Employing this sequential analysis, ALJ Martin determined that White did not engage in substantial gainful activity during the period from his alleged onset date (September 30, 2010) through his date last insured (September 30, 2012). (AR 31.) At step two, the ALJ found that White had the following severe impairments: migraine headaches; hearing loss; and disorders of the muscle, ligament, and fascia of the back and neck. (*Id.*) At step three, the ALJ found that none of White's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 32.) At step four, ALJ Martin found that, through the date last insured, White had the residual functional capacity (RFC) to perform medium work, except that he "must avoid

4

concentrated exposure to noise and would be absent from the workplace no more than one time a month." (*Id.*) The ALJ found that, through the date last insured, White was capable of performing past relevant work as a custodian, home health aide, and warehouse worker, and that none of those jobs required activities precluded by White's RFC. (AR 35.) The ALJ also made "alternative" findings for step five, concluding that, even though White is capable of performing past relevant work, there are also other jobs existing in the national economy that he is able to perform. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" in pertinent part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only upon a determination that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court conducts "'a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also* 42 U.S.C. § 405(g). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Poupore,*

566 F.3d at 305 (quoting *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)).  The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard; facts found by the ALJ can be rejected "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).  The court is mindful that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

The Second Circuit has explained that, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Secretary for further development of the evidence." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  "On the other hand, we have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Id.*  White's position is that there is "persuasive proof" of disability stemming from his physical impairments alone.  Accordingly, White maintains the court should direct that he be placed in pay status.

White argues that ALJ Martin improperly failed to give controlling weight to the opinions of White's treating physician, Dr. Cecil Beehler.  In a letter dated June 9, 2014, Dr. Beehler stated:

> Functionally, I believe that Mr. White's chronic pain, migraine headaches and depression substantially interfere with his ability to sustain concentration and attention over an 8-hour workday.  His headaches have occurred frequently enough over the last 8 years to interfere substantially with activities of daily living for several days per month.  If required to work, I expect he would be absent from work due to recurrent ear pain and infections, severe headaches[,] and anxiety. His absence would likely occur from one to several days per month depending on

> the severity of his symptoms. I find his symptoms to be consistent with his diagnoses and his complaints to be entirely credible.

(AR 617.) At the August 21, 2014 administrative hearing, ALJ Martin noted that Dr. Beehler's June 9, 2014 letter supplied a pretty good picture of White's condition in 2014, but that there was insufficient evidence about his condition at the time last insured (i.e., in 2012). (AR 63.) The ALJ accordingly requested additional information from Dr. Beehler. (AR 66.)

On August 22, 2014, Dr. Beehler completed a two-page set of interrogatories. Dr. Beehler stated that he did not have records as to the exact number of migraine headaches that White experienced between September 30, 2010 and September 30, 2012. However, he estimated that White "would have between 2–4 migraine headaches per month." (AR 722.) For that time period, Dr. Beehler described the duration of the migraines as "variable" and as lasting "between 1 day and 3 days of symptoms." (*Id.*) Dr. Beehler described the intensity of the migraines as "variable, between moderate headaches to severe requiring bed rest." (*Id.*) Dr. Beehler estimated that White "had about 2 severe migraines requiring bed rest per month in this time period." (*Id.*) Dr. Beehler also opined that, between September 30, 2010 and September 30, 2012—assuming White was employed full time—he would have been absent from work four days or more per month due to his impairments or symptoms. (AR 723.)

In his November 26, 2014 decision, ALJ Martin stated that he gave Dr. Beehler's June 2014 opinions regarding White's present condition "no probative value" as to White's level of functioning during the period at issue. (AR 35.) ALJ Martin found that the level of "absenteeism" Dr. Beehler described for that time period "is not reported in the medical records." (*Id.*) ALJ Martin found that Dr. Beehler's opinions in the August 22, 2014 interrogatories did "not correlate relative to his earlier contemporaneous treatment notes," and were therefore "not . . . persuasive." (*Id.*)

According to ALJ Martin, the medical records showed that, "beginning in October 2010, [White] reported having no headaches until January 2011 when he reported that he only had one headache that month." (*Id.*) "Thereafter, [White] again reported not having headaches until April 2011, when he reported having only an occasional 'mild headache.'" (*Id.*) "F[ro]m April 2011 until the date [White] was last insured for benefits, September 2012, [he] either reported that he had been 'doing well' or that he had not had any headaches." (*Id.*) "In August 2012, [White] reported having no current symptoms." (*Id.*)[1]

---

[1] The court's review of the relevant entries in the medical records reveals the following:

- September 14, 2010: "Present—Headaches (only about 1 a month)." (AR 486.)
- September 23, 2010: "Not Present . . . Headaches." (AR 484.)
- October 1, 2010: "Not Present . . . Headaches." (AR 482.)
- October 12, 2010: "Present—Headaches (increased migrain[e] HA [headaches] since neck injury)." (AR 480.)
- November 12, 2010: "Not Present—Headaches (doing well)." (AR 477.)
- December 14, 2010: "Not Present—Headaches (doing well, Decreased number of migraine headaches.)." (AR 471.)
- January 14, 2011: "Not Present—Headaches (doing well, Decreased number of migraine headaches.)." (AR 469.)
- February 14, 2011: "Not Present—Headaches (doing well, Decreased number of migraine headaches.)." (AR 467.)
- March 14, 2011: "Not Present—Headaches (doing well,  )." (AR 465 (so in original).)
- April 5, 2011: "Present—Headache . . . ." (AR 462.)
- April 12, 2011: "Not Present—Headaches (doing well, not that bad, has occa[s]ion[al] mild headache.)." (AR 458.)
- April 19, 2011: Physical therapy (PT) initial evaluation noting White's history of headaches and migraines. (AR 313.)
- May 10, 2011: "Not Present . . . Headaches (doing well, not that bad, has occa[s]ion[al] mild headache.) . . . ." (AR 454.)
- July 28, 2011: "Patient reports, no HA [headache] since starting PT." (AR 307.)
- August 4, 2011: "Patient reports, left sided HA this AM." (*Id.*)
- August 12, 2011: Symptoms "improving"; current treatment regimen "effective and adequate." (AR 254.)
- September 1, 2011: "Patient reports, no HA." (AR 309.)
- October 12, 2011: "Patient reports, HEP [home exercise program] help with HA and C-spine pain." (AR 310.)
- December 22, 2011: PT goals listed as "decreasing pain and headaches." (AR 300.)

Under the treating-physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)). Even when a treating physician's opinion is not given controlling weight, it is still entitled to some weight because treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ." 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion is not given controlling weight, the weight to be given the opinion depends on several factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is of a specialist; and (6) other factors which tend to support or contradict the opinion. *Id.* § 404.1527(c)(2)–(6). The Commissioner is required to give "good reasons" for the weight given to a treating source's opinion. *Id.* § 404.1527(c)(2).

Here, the medical records provide relatively sparse detail regarding the frequency and severity of White's headaches between September 2010 and September 2012. There appear to be no relevant medical records for the first half of 2012. And although there are numerous entries indicating that headaches were "not present," it is unclear whether that means White suffered from no headaches at all since the last report. Indeed, several such entries also reported

- July 27, 2012: "Present—Headache." (AR 413.)
- August 10, 2012: "Not Present—Headache." (AR 411.)
- August 17, 2012: "Follow up visit with no current symptoms." (AR 409.)

9

parenthetically that White *was* suffering from migraine headaches—just a "decreased number." Moreover, other evidence in the record, such as Elizabeth White's testimony, was consistent with Dr. Beehler's August 22, 2014 opinion. The court therefore concludes that the ALJ erred insofar as he determined that, on the basis of the medical entries alone (many of which were authored by Dr. Beehler himself), Dr. Beehler's August 22, 2014 opinion deserved no weight.

In some cases where an ALJ fails to properly apply the treating-physician rule, reviewing courts have concluded that proper application of the legal standards could lead only to the conclusion that the claimant is disabled. *See, e.g., Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 272–73 (E.D.N.Y. 2015) ("[P]roper application of the legal standards in evaluating the treating source opinions and plaintiff's credibility could only lead to one conclusion: it would further support the evidence in the existing record that plaintiff is incapable of performing the full range of sedentary work."). This is not such a case. Although Dr. Beehler's August 22, 2014 opinion might deserve more weight than the ALJ gave it, the medical records cited by the ALJ do suggest that, for the period at issue, White may have been experiencing fewer or milder headaches than in 2002 or in 2014. Absent a more precise explanation, the court cannot conclude on the current record that there is persuasive proof of disability arising from White's headaches.

Moreover, there is a significant gap in the record. As the Commissioner points out, even accepting the limitations assessed by Dr. Beehler, the record does not contain any VE testimony regarding what impact those limitations would have on the availability of work in the national economy. (Doc. 8 at 3.) This court has declined to reverse solely for calculation of benefits where there was such a gap in the record. *See King v. Colvin*, Civil Action No. 2:14-cv-184, 2015 WL 5554987, at *7 (D. Vt. Sept. 21, 2015) (denying request for remand solely to calculate

benefits where there was no VE testimony about whether jobs existed in significant numbers in the national economy that the claimant could do); *Rich v. Comm'r of Soc. Sec.*, Civil Action No. 2:11-CV-85, 2012 WL 209030, at *6 (D. Vt. Jan. 24, 2012) (recommending that ALJ call a VE to assist in determining whether being absent three days each month would preclude employment).

For the above reasons, the court concludes that there is not persuasive proof of disability such that reversal with an order to pay benefits would be appropriate. The court will accordingly deny White's Motion (Doc. 5) insofar as it seeks that relief. However, the parties agree that remand is appropriate in this case because the ALJ failed to consider White's mental impairments. The court concurs. White has alleged disability, in part, due to mental impairments including post-traumatic stress disorder (PTSD), anxiety, and depression. (*See* AR 47, 81–82, 203.) He was also addicted to painkillers. (*See* AR 50–51, 206, 208, 380–82.) White received professional mental health treatment for diagnoses of mood disorder due to chronic pain, adjustment disorder with anxiety, and PTSD. (*See* AR 249.) His treatment provider opined that he has "marked" impairments with respect to understanding, remembering, and carrying out complex instructions, and the ability to make judgments on complex work-related decisions. (AR 714.) She also indicated that White's ability to interact appropriately with the public, supervisors, and coworkers is "moderately" impaired, and that his ability to respond appropriately to usual work situations and to changes in a routine work setting is "markedly" impaired. (AR 715.)

Dr. Beehler also noted White's long-term depression and PTSD, as well as efforts to treat those issues "without significant relief" of symptoms. (AR 617.) Dr. Beehler opined that White's chronic pain, migraines, and depression substantially interfere with his ability to sustain

concentration and attention over an eight-hour workday. (*Id.*) Dr. Beehler also estimated that White's ear pain and infections, headaches, and anxiety would cause him to be absent from work one to several days per month. (*Id.*) Because the ALJ did not address White's mental impairments, remand is necessary in this case.

## Conclusion

For the above reasons, White's Motion (Doc. 5) is GRANTED IN PART, the Commissioner's Motion (Doc. 8) is GRANTED, and the case is REMANDED for further proceedings and a new decision.

Dated at Rutland, in the District of Vermont, this 22 day of March, 2016.

Geoffrey W. Crawford, Judge
United States District Court